MARCELINO GARCIA et al., as Executors of MANUEL DIAZ, Deceased, et al., Appellants, *v.* PAN AMERICAN AIRWAYS, INC., Respondent, et al., Defendants.

Second Department, May 21, 1945.

*Francis Xavier Nestor, T. Catesby Jones* and *James W. Ryan* for appellants.

*Donald Havens* and *David L. Corbin* for respondent.

HAGARTY, J.  An airplane known as the "Yankee Clipper", owned by respondent, a domestic corporation engaged in business as a common carrier, and piloted by its employee Sullivan, left La Guardia Airport on the 21st day of February, 1943, bound for Lisbon, Portugal, with intermediate stops at Bermuda and the Azores.  The following day, it crashed into the waters of the Tagus River at Lisbon.  Nineteen passengers and five crew members were fatally injured in the accident.  One of the fatally injured passengers was Manuel Diaz, who, at the time of his death, resided in the county of Westchester, in this State. This action, predicated on his death, was brought by his executors and next of kin.

The next of kin, the widow, a son and a daughter, each in the first of two respective causes of action, invoke, as applicable, the law of the Republic of Portugal and allege it to be that, where a passenger in an aircraft dies as the result of injuries sustained in that Republic, the owner and operator of the aircraft are jointly and severally liable to the widow and children of the decedent for all material, monetary and moral damages resulting from the death, unless the owner and operator prove that the accident was not due to their fault or negligence.  In the other of the two causes of each, it is alleged that the death was caused solely and directly by the negligence of respondent and its pilot.  The executors join as parties plaintiff in these six causes of action and, in a seventh cause, seek recovery to the extent of the value of the baggage and personal effects of decedent.

The affirmative defenses, to which the motion of plaintiffs is addressed, invoke a multilateral treaty concluded at Warsaw, Poland, on the 12th day of October, 1929, entitled "Convention for the Unification of Certain Rules Relating to International Transportation by Air."  This treaty concededly was adhered to by the United States of America in accordance with a proclamation of the President, dated October 29, 1934 (49 U. S. Stat. pt. 2, p. 3000), as advised by the Senate on the 15th day of June, 1934.  The Warsaw Convention contains not only a limitation of liability as to the individual in the equivalent of the sum of $8,291.87, and to the property loss, but a declaration of liability on the part of the carrier, with a defense available to the carrier, as to person, that the carrier had taken all necessary measures or that it was impossible for it to take such measures and, as to property, that the damage was occasioned by error in piloting, in the handling of the aircraft or in navigation, and that in all other respects the carrier had

taken all necessary measures to avoid damage. In substance, it is alleged in the first defense that the transportation of decedent came within these terms of the Warsaw Convention and, in the second and third defenses, that they were made expressly applicable by the agreement of decedent and the respondent.

The framers of the Warsaw Convention sought to effectuate the provisions of the compact, inclusive of the provisions specifically referred to, within as wide a scope as practicable in the light of the fact that its high contracting parties did not include all the powers of the world. They provided in the first subdivision of article 1 that '' This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire '' and then proceeded in subdivision (2) of article 1 to define the term '' international transportation.'' It was their apparent intention, in formulating the definition, to have the terms of the Convention govern where the carriage included a stop within the territory of a power not a party, although ordinarily, at least so far as our own law is concerned, the law of the place of the accident would govern. The important definition reads:

'' (2) For the purposes of this convention the expression ' international transportation ' shall mean any transportation in which, *according to the contract made by the parties,* the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an *agreed stopping place* within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention. Transportation without such an agreed stopping place between territories subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party shall not be deemed to be international for the purposes of this convention.'' (Emphasis supplied.)

This nation is a party to the Warsaw Convention; the Republic of Portugal is not. If, by agreement of decedent and respondent this was a flight contemplating New York as the place of departure and Lisbon as the place of destination, the Warsaw Convention would not apply. It does apply if, '' according to the contract made by the parties,'' New York was both the place of departure and of destination. Again, to come within the purview of the definition, this contract need not be

a single and entire one, nor the transportation itself "one undivided transportation," within the ordinary meaning of that term. There may be several successive air carriages and a series of contracts (art. 1, subd. [3]), viz:

" (3) Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party."

Respondent contends that the transportation of decedent was international, within the definition of the Convention, in that by express agreement the carriage constituted transportation from New York and back to New York, with agreed stopping places. Plaintiffs, on the other hand, contend that the agreement related to a single flight, with New York as the place of departure and Lisbon as the place of destination, with an option afforded decedent to make a return or independent flight by means of the respondent's facilities.

Decedent paid $1,157.40, representing combined one-way fares from New York to Lisbon, by way of Bermuda, and from Lisbon to New York, by way of Natal, totalling $1,286, less 10% discount. He received a passenger contract ticket, four flight coupons and a priority coupon. The contract ticket set forth New York as " Original Place of Departure " and also as " Final Destination " with " Route Via Lisbon." It expressly provided that the transportation was subject to the rules relating to liability established by the Warsaw Convention, save for certain inapplicable exceptions. It further provided that agreed stopping places should be the places stated opposite the words " Route Via " and the scheduled stopping places on the route as set forth in the timetables of the carrier. Thus, in accordance with the specific provisions of the contract, Lisbon was agreed to be a stopping place between the place of departure and the destination, as were also the other stopping places set forth in the pertinent timetable. The four flight coupons related to successive stages of this journey, which, at the bottom of each coupon, was described as a round trip with this routing: " N. Y. BDA LISBON NATAL N. Y."

The contract comes precisely within the scope of the definition of " international transportation " employed in the Warsaw

Convention. (Cf. *Grein* v. *Imperial Airways, Ld.*, [1937] 1 K. B. 50.)

Inasmuch as the Convention, as a treaty, constitutes part of the law of this land, overriding State law and policies, (U. S. Const., art. VI, § 2; *Wyman* v. *Pan American Airways*, 181 Misc. 963, affd. 267 App. Div. 947, affd. 293 N. Y. 878, certiorari denied 324 U. S. 882; *United States* v. *Pink*, 315 U. S. 203, 230, 231), its provisions supersede the usual doctrine that the right and measure of recovery are governed by the *lex loci* and not by the *lex fori*. It comes to this: One is not bound to seek redress in the courts of this country. He may submit to the jurisdiction of the foreign State and, presumably, have his rights determined in accordance with the law of that place. That is not our concern. But if he institutes action here, the law which we will apply is that set forth by the terms of the Convention, even though it be inconsistent with the law of the place. Comity is abridged to that extent. (*The Titanic*, 233 U. S. 718; *Royal Mail S. Packet Co.* v. *Companhia de Nav. Lloyd Brasileiro*, 31 F. 2d 757; *The Mandu*, 102 F. 2d 459.)

The respondent is not estopped from invoking the terms of the Warsaw Convention for the reason that, allegedly, it entered into an agreement with the Republic of Portugal to exercise its activities within Portuguese territory in conformity with Portuguese laws and regulations. That would be implicit in any event. The agreement has nothing to do with the enforcement of the contract under consideration.

I am further of opinion that there is no substance to the contentions of plaintiffs that the Warsaw Convention is not self-executing and so unenforcible, and that it is inapplicable where both passenger and operator are citizens of the same nation. The provisions of the treaty do not require implementation and may be enforced in the same manner as if enacted by statute. (*Indemnity Ins. Co. of No. America* v. *Pan American Airways*, 58 F. Supp. 338; *Foster & Elam* v. *Neilson*, 2 Pet. [U. S.] 253, 313, 314; *Bacardi Corp.* v. *Domenech*, 311 U. S. 150, 161; cf. *Cameron Septic Tank Co.* v. *Knoxville*, 227 U. S. 39; *Robertson* v. *General Electric Co.*, 32 F. 2d 495, 500, 501.) The Convention is not concerned with reciprocal treatment of nationals; its purpose is to unify rules relating to international transportation by air. There is nothing in the Convention which conditions its application upon nationality but, on the contrary, its provisions affect the rights of all litigants. It must be so enforced. (*Head Money Cases*, 112 U. S. 580, 598, 599; *Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343, 352; *O'Donnell* v. *Great Lakes Co.*, 318 U. S. 36, 41, 42.)

The contention of plaintiffs that the provisions of the Convention limiting liability cannot be enforced because the passenger was not afforded a choice of rates must be considered in the light of the fact that these provisions, in effect, substitute the admiralty doctrines of exemption from liability, conditioned on lack of fault, and statutory limitation of liability for the theory of liability of common carriers. (Carriers: International Transportation by Air; Warsaw Convention, 22 Corn. L. Q. 561.) Public policy which frowns on contractual limitation of liability of a common carrier, save where " ' the rate was tied to the release ' " (*Union Pac. R. R. Co.* v. *Burke,* 255 U. S. 317, 321) and the passenger was offered a choice (*Railroad Company* v. *Lockwood,* 17 Wall. [U. S.] 357, 379; *Conklin* v. *Canadian-Colonial Airways, Inc.,* 266 N. Y. 244), is subordinate to the provisions of the Convention insofar as they are operative. Article 22 of the Convention contains a fixed limitation of liability, but with this exception: " Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability." Although the parties are free to contract for a higher limit of liability, there is no requirement on the part either of the carrier or the passenger to enter into or offer such a special contract. (See *Railroad Company* v. *Lockwood, supra,* 361; *Wyman* v. *Pan American Airways,* 293 N. Y. 878, 879, *supra.*)

The discussion thus far relates to the first affirmative defense, and my conclusion is that the motion with respect to it was properly denied.

The further contention of plaintiffs that the agreement of decedent to limit liability is not binding on them in such statutory actions as they are enabled to maintain for his death can have reference only to the second and third defenses. The sufficiency of the second and third defenses, assuming the need of making such determination, is dependent upon the law of the Republic of Portugal, which has not been presented on this motion and is a matter for proof at the trial. (*Whitford* v. *The Panama Railroad Company,* 23 N. Y. 465.)

The order should be affirmed, without costs.

CLOSE, P. J., JOHNSTON, LEWIS and ALDRICH, JJ., concur.

Order affirmed, without costs. [See *post,* p. 850.]