**KOMLOS v. COMPAGNIE NATIONALE AIR FRANCE.**

**ROYAL INDEMNITY CO. v. COMPAGNIE NATIONALE AIR FRANCE.**

United States District Court
S. D. New York.

July 14, 1952.

Frederick W. Scholem, New York City (Theodore E. Wolcott, New York City, of counsel), for plaintiff Komlos.

Sutta & Frankel, New York City (Nathan Frankel and Frank Reiter, New York City, of counsel), for plaintiff Royal Indemnity Co.

Foley & Statt, New York City (Frank J. Foley and Milton James, New York City, of counsel), for defendant.

LEIBELL, District Judge.

On October 28, 1949, Emery Komlos was a passenger on an airplane operated by the defendant (Air France), on a flight from Paris to New York. He lost his life when the plane crashed on the island of San Miguel, Azores, Republic of Portugal.

Komlos was a citizen of the United States and a resident of the State of New York. He was in the employ of Refugee Economic Corporation and was engaged in the work of the corporation at the time of his death. The Royal Indemnity Company had issued a workmen's compensation policy, which covered Komlos and other employees of the Refugee Economic Corporation under the Workmen's Compensation Law of the State of New York.

Komlos was 32 years old and was unmarried. He left him surviving his mother, Bertha Komlos, and a sister, Edith Komlos. After his death payments were made to his mother under the compensation policy. The attorney for the administratrix raises a question as to whether an "award" had been "made" and the "claim" for compensation "determined" under section 20 of the Compensation Law. I believe that the provisions of the Law were complied with. This will be discussed near the end of this opinion.

On October 3, 1951, Royal Indemnity Company instituted an action (hereinafter called the Royal Indemnity action) in this court against Air France for the wrongful death of Emery Komlos, claiming that Royal Indemnity is the statutory assignee of the "cause of action" under section 29, subd. 2, of the N. Y. Compensation Law, in that a claim had been filed with the Workmen's Compensation Board by the next of kin of the decedent, Bertha, the mother; that an award had been duly entered and filed by the Board on March 6, 1950; and that pursuant to the award the Royal Indemnity had paid $400 for funeral expenses, and certain sums in weekly and bi-weekly payments to the mother, which up to September 28, 1950, amounted to $2,-100. Royal Indemnity alleged that the "cause of action" of the next of kin against the defendant for the death of Emery Komlos was assigned to the Company under section 29, subd. 2, by operation of law, by reason of the failure of the next of kin to institute an action against Air France within the time fixed by the New York Workmen's Compensation Law, that is, "within six months after the awarding of compensation".

The Surrogate's Court, New York County, issued Letters of Administration on the estate of Emery Komlos, to his sister, Edith. On October 26, 1950, as such Administratrix of the Komlos estate, she in-

stituted in the Supreme Court of the State of New York an action (hereinafter called the Komlos action) against Air France on behalf of Bertha Komlos and Edith Komlos and the estate of the decedent. The action was removed to this Court on grounds of diversity of citizenship. The original complaint was an ordinary negligence suit.

1. The Warsaw Convention was a convention for the unification of certain rules relating to international transportation by air, signed by the representatives of twenty-three countries at Warsaw, Poland, on October 12, 1929. Adherence to the Convention was advised by the United States Senate, June 15, 1934, and proclaimed by the President of the United States, October 29, 1934. See 49 U.S. Statutes at Large, page 3000 et seq.

The Republic of Portugal adhered to the Warsaw Convention in June 1947. The Republic of France was one of the original signatory powers.

2. According to the Ninth paragraph of the Komlos complaint the *first cause of action* is based on the negligence of the defendant.

Paragraph Tenth of the complaint alleges that decedent was survived by Edith Komlos (his sister) and Bertha Komlos (his mother). Paragraph Eleventh alleges that the action is brought by plaintiff "in behalf of the next of kin of deceased herein described". Paragraph Thirteenth alleges that "the said next of kin of the decedent were dependent upon him for their support and maintenance and as a result of his death have been deprived thereof".

The allegations of the paragraphs Tenth, Eleventh and Thirteenth are repeated in the Second, Third, Fifth and Sixth causes of action.

The *second cause of action* is based on the wilful misconduct and gross negligence of the defendant (see paragraph Seventeenth).

The *third cause of action* repeats the allegations of the first cause of action and adds in paragraph Twentieth allegations concerning the law of Portugal as follows:

"*Twentieth:* Upon information and belief that at all times herein mentioned it was and continues to be the law of the Republic of Portugal that where a passenger in a means of transport dies as a result of injuries sustained in the Republic of Portugal arising out of the maintenance, operation or control of said means of transport, the owner, operator and the pilot are jointly and severally liable to the

It made no reference to the Warsaw Convention [1]; nor did it use any of the language thereof. Subsequently an amended complaint was served in the Komlos action. It was used as a model for the complaint in the Royal Indemnity action.

The complaints in the two actions are now similar in the claims they assert.[2]

Estate and dependents and next of kin of said passenger for all material, monetary and moral damages and that such owner, operator and pilot are liable, unless they prove that the accident was not due to their fault or negligence."

The last clause "unless etc." is probably based on some provision of the Portugese law.

The *fourth cause of action* repeats the allegations of the second cause of action and the allegations of paragraph twentieth as to the law of the Republic of Portugal.

The *fifth cause of action* repeats the allegations of the first cause of action and adds a paragraph as to the law applicable to the crash in the Azores, Portugal, as follows:

"*Twenty-Fifth:* Upon information and belief that pursuant to the law applicable to said crash in the Azores, Portugal, where a passenger dies as aforesaid arising out of the operation of such aircraft, the carrier is liable for damages sustained by reason thereof to the estate, members of decedent's family, next of kin, and his representatives and that such carrier is liable unless it proves that it and its agents have taken all necessary measures to avoid the damages or that it was impossible for it or them to take such measures."

The last four clauses "Unless etc." are taken from article 20(1) of the Warsaw Convention.

The *sixth cause of action* repeats the allegations of the second cause of action and the allegations of the 25th paragraph of the complaint.

To briefly state the analysis of the six causes of action: (A) the first cause of action (based on negligence) is repeated in the third and fifth causes of action with the addition of an allegation as to the "law of the Republic of Portugal" in the third cause of action, and with the addition of an allegation as to the law applicable to the crash in the Azores, Portugal, in the fifth cause of action. (B) The second cause of action (based on wilful misconduct and gross negligence) is repeated in the fourth and sixth causes of action with the addition

Each pleads six claims or causes of action. Each complaint claims $150,000 as the loss of next of kin for the wrongful death of Emery Komlos and $550 for burial expenses. A claim of $1,500 is also pleaded in each action for the loss of decedent's baggage and personal belongings.

The defendant answered the Komlos amended complaint November 2, 1951, but has not yet answered the Royal Indemnity complaint. In the answer to the Komlos complaint the defendant has pleaded that the entire "cause of action" for wrongful death alleged in the Komlos complaint belongs to the Royal Indemnity Company, under the assignment provision of Section 29, subd. 2, of the New York Workmen's Compensation Law, subject to the obligation of the insurer to account to decedent's dependents for a certain part of the recovery as provided in the said section.

As to the claim of $1,500 for loss of baggage and personal belongings, the defendant asserts that it is for a sum less than the $3,000 pecuniary jurisdiction requirement of this Court, in an action where jurisdiction is based on diversity of citizenship.

### Motions

In the Komlos action the defendant has moved for summary judgment on the grounds that the plaintiff does not own the claims asserted therein, because such claims and all rights thereto have been assigned by operation of law to the Royal Indemnity Company which has commenced an action in this court for the same relief. In the Royal Indemnity Company action, the defendant has moved to dismiss the complaint, on the grounds that the complaint fails to state a claim on which relief can be granted, in that Royal Indemnity Company does not own the claim. Defendant argues that both complaints are for the same relief and that there cannot be a recovery for wrongful death under both the Komlos and Royal Indemnity

complaints; that one of the actions is not brought by the real party in interest and should be dismissed; that the documentary proof shows that Royal Indemnity owns the cause of action for wrongful death and that the Komlos complaint should be dismissed; but that if the court should decide that Royal Indemnity does not own the claim for wrongful death then the Royal Indemnity complaint should be dismissed.

The Administratrix of the Komlos estate has moved to consolidate the Komlos action and the Royal Indemnity action for trial.

Although both complaints allege a claim for the loss of decedent's baggage and personal effects, valued at $1,500, that claim is separate and distinct from the death claim—to this extent at least, that it did not pass to the Royal Indemnity Company by statutory assignment under the New York Workmen's Compensation Law. It belongs to the decedent's estate and is subject to the provisions of the Warsaw Convention in relation to destruction or loss of baggage.

The claim for funeral expenses may be recovered in the action for wrongful death, § 132 of the N. Y. Decedent Estate Law. Royal Indemnity, under the compensation award, paid $400 for funeral expenses. Either the administratrix or the Royal Indemnity Company would be entitled to recover for the funeral expenses, because it is part of the claim in the death action under section 132. If the administratrix recovered on that claim, she would have to pay $400 to Royal Indemnity.

### The Claim for Wrongful Death

The principal questions presented by defendant's motions are these: (A) Has decedent's sister, Edith, a beneficial interest in the cause of action, the right of action, for wrongful death? (B) Who has the right to bring suit for the wrongful death of Emery Komlos, the Administratrix of

in the fourth cause of action of allegations as to the "law of the Republic of Portugal", and with the addition in the sixth cause of action of allegations as to the law applicable to the crash in the Azores, Portugal.

The answer of the defendant, in addition to other denials, puts in issue the allegations of the 20th and 25th paragraphs of the complaint.

the Komlos estate or the compensation insurer, Royal Indemnity Company? In answering those questions it will be necessary to consider the Warsaw Convention, the New York doctrine of conflict of law, the applicability of the law of the Republic of Portugal and the applicability of certain statutes of the State of New York.

The attorney for the Komlos Administratrix argues that the persons who have the right of action for wrongful death should be determined by the lex loci delicti, the law of Portugal; that the Warsaw Convention does not create a right of action; that section 29, subd. 2, of the N.Y. Compensation Act has no extra-territorial effect; that a right of action arising under Portugese law would not be assigned to the insurer under section 29, subd. 2, of the N. Y. Compensation Act; that under Portugese law the sister Edith as well as the mother, Bertha, own the right of action; and that they may assert that right through the Administratrix.

The attorney for the defendant, Air France, argues that the cause of action for wrongful death is created by the Warsaw Convention; that the lex fori, the law of New York, determines who have the right to bring the suit and who are entitled to share in any recovery; that the mother, Bertha, is the sole next of kin of the decedent under New York law and she was also found to be decedent's sole dependent by the New York Workmen's Compensation Board; that the cause of action for wrongful death passed to the insurer, Royal Indemnity Company, under section 29, subd. 2, of the New York Workmen's Compensation Law, because decedent's sole dependent (the mother, Bertha) received the compensation award and failed to bring an action against the defendant through the Administratrix until more than six months after the compensation award was made.

## The Warsaw Convention

Before arriving at a conclusion as to what parts of the lex fori or the lex loci delicti apply to the facts in this case, it is necessary to consider a preliminary question. Did the Warsaw Convention itself create the cause of action for the wrongful death of Emery Komlos, a passenger on an international airplane flight?

Counsel for defendant, Air France, contends that the Warsaw Convention created a cause of action "ex contractu"; and that the law of Portugal, the place of the accident, has no application. Counsel for plaintiff Komlos denies that the Convention created a new right of action. He argues that plaintiff's action is based on a tort and that it is created under the lex loci delicti, the law of Portugal, and that Portugese law should be applied in determining who owns the right of action. Article 24(2) of the Convention.

In Wyman v. Pan American Airways, Inc., 1943, 181 Misc. 963, 43 N.Y.S.2d 420, 423, affirmed 267 App.Div. 947, 48 N.Y.S.2d 459 and 293 N.Y. 878, 59 N.E.2d 785, certiorari denied 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432, the airplane was lost at sea. Judge Schreiber held that the applicable statute was the Federal Death on the High Seas Act. He stated:

"The right to bring a death action is purely statutory. It did not exist at common law (Debevoise v. New York, L. E. & W. R. R. Co., 98 N.Y. 377) and depends upon the existence of a statute creating a right of action at the place where the 'force impinged' causing injuries and death. Whitford v. Panama R. R. Co., 23 N.Y. 465; Kristansen v. Steinfeldt, 165 Misc. 575, 300 N.Y.S. 543, reversed on other grounds 256 App.Div. 824, 9 N.Y.S.2d 790. No new substantive rights were created by the Warsaw Convention and all the rules there laid down are well within the framework of existing legal rights and remedies. * * *

"The right to any recovery in this action thus must depend on some statute. The New York Decedent Estate Law, § 130, can have no application as the injury and death did not occur within the territorial confines of the State. Whitford v. Panama R. R. Co., supra. The only possible relevant statute, therefore, is the federal 'Death on the High Seas Act' * * *."

Another case which discusses the Warsaw Convention is Garcia v. Pan American Airways, Inc., 1945, 269 App.Div. 287, 55 N.Y.S.2d 317, affirmed 1946, 295 N.Y. 852, 67 N.E.2d 257, certiorari denied 329 U.S. 741, 67 S.Ct. 79, 91 L.Ed. 640. The following is quoted from Judge Hagarty's opinion, 269 App.Div. at page 292, 55 N.Y.S.2d at page 321:

"Inasmuch as the Convention, as a treaty, constitutes part of the law of this land, overriding state law and policies (U.S.Const. art. VI, clause 2; Wyman v. Pan American Airways, 181 Misc. 963, 43 N.Y.S.2d 420, affirmed 267 App.Div. 947, 48 N.Y.S.2d 459 [affirmed] 293 N.Y. 878, 59 N.E.2d 785, certiorari denied [324 U.S. 882] 65 S.Ct. 1029 [89 L.Ed. 1432]; United States v. Pink, 315 U.S. 203, 230, 231, 62 S.Ct. 552, 86 L.Ed. 796), its provisions supersede the usual doctrine that the right and measure of recovery are governed by the *lex loci* and not by the *lex fori*. It comes to this: One is not bound to seek redress in the courts of this country. He may submit to the jurisdiction of the foreign state and, presumably, have his rights determined in accordance with the law of that place. That is not our concern. But if he institutes action here, the law which we will apply is that set forth by the terms of the Convention, even though it be inconsistent with the law of the place. Comity is abridged to that extent. The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171; Royal Mail S. Packet Co. v. Companhia de Nav. Lloyd Brasileiro, D.C., 31 F.2d 757; The Mandu, 2 Cir., 102 F.2d 459."

In Ross v. Pan American Airways, 299 N.Y. 88, 85 N.E.2d 880, 881, 13 A.L.R.2d 319, Judge Desmond states that the Warsaw Convention "regulates and limits the liability of air carriers engaged in international transportation, as 'international transportation' is defined in the Convention".

Salomon v. Koninklijke Luchtvaart Maatschappij, Sup., 107 N.Y.S.2d 768, 773, is a case relied on by defendant, Air France, to justify its contention that the Convention has created a new right of action. In that case the court used the following emphatic language:

"If the Convention did not create a cause of action in Art. 17, it is difficult to understand just what Art. 17 did do."

The court's decision is on appeal to the Appellate Division, First Department.

[1] If an aerial flight comes within the Convention's definition of "international transportation" [3] and the passenger is killed in the course of the flight, the provisions of the Convention attach to the right of action created by the lex loci delicti. Such was the situation in Ross v. Pan American Airways, Inc., supra, and Garcia v. Pan American Airways, Inc., supra. Both those actions arose out of the crash of an airplane in Portugal, at a time when Portugal had not yet adhered to the Convention. (At the time Emery Komlos lost his life in a crash, Portugal had already signified its adherence to the Warsaw Convention.) The defendant interposed defenses in its answers in the Ross and Garcia suits, which invoked the provisions of the Convention. In both cases the defenses were ruled valid. It matters not that a plaintiff does not allege that the cause of action is subject

3. Article 1, subdiv. 2, defines international transportation as follows:
"* * * 'international transportation' shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention. Transportation without such an agreed stopping place between territories subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party shall not be deemed to be international for the purposes of this convention." 49 Stat. 3014.

to the provisions of the Warsaw Convention. If the Convention applies, then plaintiff is restricted to whatever limitations the Convention placed on the right of action created by the lex loci delicti. Ross v. Pan American Airways, 299 N.Y. 88, at page 97, 85 N.E.2d 880, 13 A.L.R.2d 319.

The ticket that was sold to Komlos for the fatal flight contained the following provision:

"The transportation effected under this passage ticket and the baggage check is subject to the rules of liability created by The Convention for the Unification of certain Rules Relating to International Transportation by Air, signed at Warsaw 12 October 1929 in so far as it concerns international transportation within the meaning of the said Convention."

The above provision was included in the passenger's ticket pursuant to Article 3 of the Convention which provides:

"Article 3

"(1) For the transportation of passengers the carrier must deliver a passenger ticket which shall contain the following particulars:

\*    \*    \*    \*    \*    \*

"(e) A statement that the transportation is subject to the rules relating to liability established by this convention."

■ This action for damages for the wrongful death of Emery Komlos is an action ex delicto not ex contractu. At common law there was no right of action for wrongful death, but many states and nations now grant the right to sue for wrongful death.

■ The language of Articles 17, 20, 22 and 25 is such as is commonly associated with actions in tort, actions ex delicto. Article 17 clearly relates to a cause of action ex delicto. The fact that the passenger's ticket refers to the "rules of liability created by the Convention" does not make the action "ex contractu". The exoneration from liability provided for under Article 20(1) is a complete defense to the claim under Article 17 and the limitation

of liability under Article 22(1) is a partial defense. But if the plaintiff can prove that the damage was caused by the carrier's "wilful misconduct" then the defenses of exoneration and limitation are not available to the defendant carrier. Those defenses are not strictly speaking defenses "ex contractu". They are in fact conditions attached to the "cause of action". The cause of action is created by the lex loci. The conditions which are attached thereto are created by the Warsaw Convention. The gravamen of the action is the negligence of the defendant which wrongfully caused the death of Emery Komlos. Maynard v. Eastern Air Lines, 2 Cir., 178 F.2d 139, 13 A.L.R.2d 646. The Warsaw Convention does not change the basic rule that the contract of carriage is not the gravamen of the action for wrongful death.

■ I am of the opinion that the Warsaw Convention does not create a right of action for wrongful death. The Convention creates a *presumption* of liability from the happening of the accident. Art. 17. It gives the carrier complete exoneration from liability if the carrier can prove that it took all necessary measures to avoid the damage. It recognizes the lex fori doctrine of contributory negligence, Art. 21, assuming that under certain conditions a passenger's negligence might contribute to the damage. It grants a limitation of the liability of the carrier, Art. 22(1), to 125,000 francs (approximately $8,300) if the carrier is not entitled to exoneration from liability under Art. 20, and is not shown to be guilty of "wilful misconduct", Art. 25, which caused the damage.

That the Convention did not create any more than a presumption of liability is clear from the letter of Secretary of State Hull, dated March 31, 1934, addressed to the President, recommending the adherence of the United States to the Convention. The Secretary of State wrote:

"The effect of article 17 (ch. III) of the Convention is to create a presumption of liability against the aerial carrier on the mere happening of an accident occasioning injury or death of a passenger subject to certain defenses allowed under the Convention to the

aerial carrier. The burden is upon the carrier to show that the injury or death has not been the result of negligence on the part of the carrier or his agents. It is understood that while this rule has been adopted in some jurisdictions in this country in aircraft accident cases upon the theory of res ipsa loquitur, in certain other jurisdictions in this country the old common-law rule has been applied in accident cases arising in air transportation, so that the passenger or his legal representative has had the burden of proving negligence in the operation of the aircraft, before the carrier could be held liable for damages. The principle of placing the burden on the carrier to show lack of negligence in international air transportation in order to escape liability, seems to be reasonable in view of the difficulty which a passenger has in establishing the cause of an accident in air transportation."

See, U. S. Aviation reports, 1934, at p. 343.

Judge Desmond discusses Secretary of State Hull's letter in Ross v. Pan American Airways, 299 N.Y. 88, at pages 97 and 98, 85 N.E.2d 880, at page 885, 13 A.L.R.2d 319, as "creating a presumption of liability on the mere happening of an accident".

Article 17—*Injury to passenger.* "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

In determining whether or not the Warsaw Convention creates a right of action for wrongful death, we should not consider Article 17 of and by itself alone. That article should be read together with Article 20(1) and Article 22(1) and Article 25(1). When Article 17 is thus read, it is apparent that the Warsaw Convention created only a presumption of liability (subject to a rebuttal and to limitation) as Secretary of State Hull described it, unless the damage was caused by the carrier's wilful misconduct, Art. 25(1), in which case "the provisions of this Convention which exclude or limit his liability" are not available to him.

The effect of Article 17 of the Warsaw Convention seems to be this:

■■ If the decedent meets his death in the course of an "international transportation", as that term is defined in Article 3 of the Convention, then if the place of the accident is within a nation that has not adhered to the Warsaw Convention and has its own statute for wrongful death actions, the conditions and limits of the Convention, including Article 24(2), would nevertheless be applied in a suit for wrongful death in a forum specified as a proper forum under Article 28 of the Convention. But if the law of the place of the accident does not provide for a right of action for wrongful death, the forum would apply Article 17 of the Convention; and under those circumstances it might be said that Article 17 created the right of action for wrongful death. Under those circumstances, it may also be said that the right of action, even though its gravamen is ex delicto, arises out of the contract of carriage which made the Rules and Regulations of the Warsaw Convention applicable to the international transportation.

■■ If the lex loci delicti does provide for a right of action for wrongful death and if the nation controlling the locus has not adhered to the Warsaw Convention, then that nation within its own Courts would be free to apply its own law in relation to wrongful death regardless of the provisions of the Warsaw Convention if an action is commenced within its own courts. Garcia v. Pan American Airways, 269 App.Div. 287, at page 292, 55 N.Y.S.2d 317. But if the place of the accident is within a nation that has adhered to the Warsaw Convention, and if the local law there has no provision for an action for wrongful death, the provisions of the Convention would nevertheless be applied within that nation if that nation is a proper forum in which to bring the action under Article 28 of the Convention, because the Convention would be the su-

preme law in relation to actions for wrongful death in the course of international transportation by air.

Although the Warsaw Convention attached a number of conditions to the right of action created by the lex loci, the Convention did not prescribe the person or persons who may bring the suit, or the person or persons who have a right or interest in the suit. Article 24 states: [4]

"(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

"(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights."

■ Apparently the Convention had no intention of legislating on a matter it deemed a proper subject for national rather than international legislation. But the Convention does specify various forums in which the action for damages may be brought. The law of the forum selected by the plaintiff would determine who had the right to bring the suit. This duty is in keeping with certain other duties explicitly imposed on the forum by the Warsaw Convention. See Articles 22, 25, 28 and 29.

■ As late as the final session of the Convention the Swiss delegation proposed that subdivision 2 of Article 24 should provide:

"The classes of persons who are authorized to receive the sums due from the carrier on a suit for damages, are determined by the national law of the deceased."

The amendment was rejected in favor of the final wording. Thus the Convention has left open the question as to whether the lex fori or the lex loci delicti should determine which person or persons has the right of action created by the Convention; and their respective rights, if there is a conflict of law between the lex fori and the lex loci in that respect. A United States District Court sitting in the State of New York must apply the conflict of laws doctrine prevailing in the New York State courts. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ Ordinarily the lex loci delicti, the place where the accident occurs, creates the right of action and determines also who has the right of action and among whom the amount recoverable shall be distributed. Goodrich on Conflict of Laws, § 105, p. 302. Pennsylvania R. Co. v. Levine, 2 Cir., 263 F. 557; Restatement of Conflict of Laws, § 393. As to who may bring the suit, Goodrich holds: "Unless the statute (of the lex loci delicti) limits suit to named beneficiaries, or a particular administrator or personal representative, an administrator appointed at the forum may institute the action". Teti v. Consolidated Coal Co., D.C.N.D.N.Y. 1914, 217 F. 443; Leonard v. Columbia Steam Navigation Co., 84 N.Y. 48. In the case at bar the administratrix was appointed by the Surrogate's Court, New York County, the place of decedent's domicile. Under the law of New York she is empowered to bring an action for wrongful death. Her right to do so is recognized by the law of Portugal.

■ Article 28(2) of the Warsaw Convention provides that "Questions of procedure shall be governed by the law of the court to which the case is submitted". That is in accord with the New York conflict of laws doctrine. Kursa v. Overseas Shipping Co., 217 App.Div. 775, 217 N.Y. S. 194; Murray v. New York O. & W. R. Co., 242 App.Div. 374, 275 N.Y.S. 10. But who have the right of action and their respective rights in any recovery is not a question of procedure. Under the New York conflict of laws doctrine it is a sub-

4. Article 18 relates to damages to goods and baggage; Article 17 to claims for bodily injury or the death of a passenger; Article 19 to claims for delay in the transportation of passengers, baggage, or goods.

404

stantive question which in an ordinary case, where the lex loci delicti creates the right of action, is determined by the lex loci. Coster v. Coster, 289 N.Y. 438, 46 N.E.2d 509, 146 A.L.R. 702; Mertz v. Mertz, 271 N.Y. 466, 3 N.E.2d 597, 108 A.L.R. 1120.

██ Under Section 130 of the New York Decedent Estate Law the Administratrix may bring an action on the claim for wrongful death if the decedent has left a "husband, wife, or next of kin", but under Section 133 the mother alone would be entitled to the distribution of the damages recovered. Under the New York law the sum recovered for wrongful death is not part of the decedent's general estate; it is a special fund to be distributed to the next of kin, who need not be dependents. Dependents as defined in the Workmen's Compensation Law, § 16, and the "next of kin" as defined by the Decedent Estate Law, § 134, are not synonymous. Zirpola v. T. & E. Casselman, Inc., 237 N.Y. 367, 143 N.E. 222; Battalico v. Knickerbocker Fireproofing Co., 250 App.Div. 258, 294 N.Y.S. 481; Bachman v. Fred Seitz, Inc., 254 App.Div. 159, 4 N.Y.S.2d 653; Petrone v. United States Trucking Corp., 236 App.Div. 531, 260 N.Y.S. 671, affirmed 262 N.Y. 540, 188 N.E. 55.

In view of the fact that the aeroplane crash that resulted in the death of Emery Komlos occurred within the territorial sovereignty of Portugal, thereby making that country the locus delicti, and because plaintiff's attorneys contended that under the Portugese law, Edith Komlos had a right of action and also a share in any recovery, the court requested counsel for the plaintiff Komlos and counsel for Air France to procure affidavits from experts on the law of

Portugal, setting forth the law of Portugal as applicable to the action for wrongful death in the case at bar. More particularly, counsel were requested to ascertain what person or persons under the laws of Portugal were entitled to bring the action for wrongful death, and what person or persons were entitled to share in the proceeds of any recovery.

Counsel for Air France has submitted five affidavits from lawyers resident in Portugal. The attorney for plaintiff submitted only his own affidavit in reply.

In substance the affidavits of the Portugese lawyers make the following points:

(1) Under the law of Portugal the estate, as an entity, has no standing in a Portugese court of law as long as the heirs of the estate are identified.

(2) Under the law of Portugal the heirs of the deceased would be determined in accordance with the laws of succession of the decedent's domicile.

(3) Under the law of Portugal the person or persons who acquire the right to bring the action for wrongful death are determined by the law of the forum since this is considered as a question of procedure.

(4) Under the law of Portugal the person or persons entitled to the proceeds of a recovery if any are determined by the law of the place of the accident.

(5) Under the law of Portugal the person or persons having a right to any recovery in a wrongful death action are those who are legally entitled to receive financial support from the decedent, and who have suffered a loss as a result of his death. Whether or not a person is entitled to support is to be determined in this case by the law of New York,[5] the law of domicile.

5. Dr. Manuel Antonio Fernandes, after citing various provisions of the law of Portugal, expressed his opinion on this point as follows:

"According to these provisions anyone whose rights are violated and who suffers, in consequence, a damage, has the right of action to the effect of obtaining indemnity for the damage sustained.

"Therefore, all those who, by the death of Emery Komlos, were affected in their legally protected interests may sue the Air France Company for indemnity.

"Thus, the mother has right of action since she suffered the loss of the person who supported her and should legally do so, (this is, if the law of New York legally required such support; the Portugese law would require support of the mother, but on this point the New York law must be followed).

"The sister may have a right of action only if she can allege and prove two factors: (i) that she received material support from her brother regularly because she needed it, and (ii)

that the law or an order of the court required that her brother give that support (again this is a point on which the law of New York must be followed, according to article 27 of the Civil Code which states that 'The civil status and capacity of foreigners is governed by the law of their countries'.)"

José de Azeredo Perdigao stated that: "* * * if the disaster is mortal, the following, alone, can demand compensation: the surviving consort, all the persons to whom the victim would be obliged to give alimentation, and the legitimate heirs of that same victim (descendants or ascendants), because those are the only persons who can accuse those who caused the accident, or the entity civilly responsible for them, of a 'violation of rights':

\*  \*  \*  \*  \*  \*

"b)—the creditor for alimentation is injured in his right to receive it from the victim, which right is reciprocal between descendants and ascendants and between brothers and sisters, in the terms established in article 162 and following of the Civil Code; and

\*  \*  \*  \*  \*  \*

"The sister would be entitled to compensation only in the case of the following conditions being simultaneously fulfilled:

"1st)—To be entitled to alimentation by her personal law—the American;

"2nd)—To be receiving alimentation fixed by expressed agreement or by judicial decision."

Dr. Manuel Duarte Gomes da Silva gave his opinion as follows:

"d)—In accordance with what we have said in subdivision c) and d) of par. 10 and subdivision of the present paragraph, we should conclude that the mother and sister of Emery Komlos have only the right to indemnity, by loss of alimony given them by Komlos, in the following conditions:

"I)—If Komlos really gave this alimony, for in no other way would there be damage (subd. c) par. 10.); and having in mind what was said in subd. a) par. 10, the damages would have to be alleged and proved separately as to the mother and as to the sister, and could be recognized in relation to one and not in relation to the other;

"II)—It would not be enough that Komlos usually supported his mother or sister, or both: it, would be necessary that each one of them had the *right* to that support (subd. d) par. 10.); for the existence of that right it would be necessary there having been an agreement or a court order of support, in the terms in subdivision b) of this paragraph.

"e)—What has been said in the foregoing subdivision is entirely based on the Portugese law.

"It must be added, however, that being Emery Komlos, his mother and his sister, of American Nationality, the right and obligation of support, in relation to them, and for the *Portugese law itself* are regulated by the American Law, and not by the dispositions of the Portugese Civil Code, * * *."

Dr. Francisco Bahia dos Santos set forth his views as follows:

"The injured party who is the person whose rights have been offended, may either be (in the cases of personal accident) the individual who physically suffered the corporal injury—when and so long as he does not die—or, as from his death, the persons who were maintained by him under a legal right to such maintenance.

\*  \*  \*  \*  \*  \*

"The sole right to bring any action is in the mother as the only person who suffered a real material damage (i. e. the loss of support which she had been receiving and to which the Portugese law gave her a right). The mother would receive the entire proceeds of such an action.

"The sister has no right to sue, and no right to the proceeds of any action. If, however, the sister could show that she had been receiving regular support from her brother, and that the law required that he give her such support (in Portugal this means an order of a court requiring that such support be paid, because a brother is not required to support his sister unless special circumstances requiring the support and showing the ability of the brother to give it have been proved to the court or proof by authenticated document of an agreement to give such support), then and only then, could the sister bring an action for the loss of that support. If the sister could establish such a right to bring an action, then the proceeds, if any, would belong to her.

"Finally, on the point of whether there is any requirement by law that the support be given, Civil Code 27 should be noted. It says as follows:

"'The civil status and capacity of foreigners are governed by the law of their country'.

"In accordance therewith the question of whether there was any duty upon the brother to support his mother, or to support his sister, must be decided in accordance with the law of New York."

(6) Under the law of Portugal, the mother of the deceased in this case is the only one entitled to indemnity for the deceased's death, since she alone can fulfill the requisites stated in No. 5.

(7) The heirs, unless damaged in the manner specified in No. 5, are not permitted to bring an action for wrongful death. The heirs however are entitled to receive compensation for the loss of the deceased's personal effects, baggage, etc.

■■■ Thus under the law of Portugal (lex loci delicti) the person who may bring the action is determined by the law of the forum (New York); the next of kin would be determined by the law of decedent's domicile (New York); and those entitled to share in the recovery would be determined by the law of Portugal. As will be shown later Edith Komlos could not qualify as a "dependent" either under the law of Portugal or the law of New York.

The attorney for the plaintiff argues that what the Portugese law may be is an issue of fact; that it should not be determined on affidavits alone; and that he is entitled to cross-examine the Portugese lawyers who have submitted five affidavits on that subject. The attorney for the plaintiff was given the same opportunity to submit affidavits of experts on Portugese law. He has had several months in which to do so. In February of this year I requested both sides to obtain affidavits as to the applicable Portugese law. One of the attorneys for the defendant, after a trip to Portugal, submitted the affidavits of defendant's experts on April 14th. The attorneys for plaintiff were given further time in which to obtain experts and file affidavits. This they did not do, but finally on June 9th one of plaintiff's attorneys submitted his own affidavit in which he criticized some of the statements and conclusions in the affidavits of defendant's experts on Portugese law. Plaintiff's attorney states in his affidavit of June 9th:

"The reasons for requiring common law proof at the trial of the foreign law are compelling. By that time, as the preparation of plaintiff's case will undoubtedly require, plaintiff's attorneys will have gone to Portugal to take oral depositions of various witnesses to the accident including depositions on the Portugese Law. Both sides will then have an opportunity to cross-examine and by this means, the true law of Portugal should emerge."

■■■ I do not agree with that conclusion. If plaintiff's attorney had any expert opinion to submit on Portugese law that would have contradicted the opinions expressed in the affidavits of defendant's experts, I believe he would have done so. Under the circumstances I feel justified in disposing of that question on the affidavits of defendant's experts and on the reply affidavit of plaintiff's attorney in the Komlos action. The summary of what the defendant's experts state the Portugese law to be has been hereinabove set forth. Under it, Edith Komlos has no right of action and no right to share in the proceeds of any recovery which may be had in the Royal Indemnity action.

Under the law of Portugal the decedent's legal dependents, those who are legally entitled to receive financial support from the decedent and who have suffered a loss as a result of his death, are entitled to share in the amount recovered for wrongful death. Edith Komlos claims to be in that class, together with her mother, Bertha. Under the law of New York, only the next of kin has a right to the recovery in an action for unlawful death. Only the mother Bertha is decedent's next of kin. Under the law of Portugal, Edith would have to show that she was legally entitled to receive financial support from the decedent; she would have to show that under some statute, or judgment, or agreement, the decedent was obliged to support her under the law of New York.

On June 9, 1952, Edith Komlos submitted the following affidavit in opposition to defendant's motion for summary judgment, dismissing the complaint in the Komlos action:

"I am the sister of the deceased, Emery Komlos, and am also the Administratrix of his estate. For several years and up to the time of his death, Emery Komlos contributed substantially to my support and maintenance. From time to time he gave me money and gifts. He paid for most of my

clothes and he paid the rent at the premises where I lived and also paid for the food and other articles and services that I consumed. He also gave me the money for my medical and dental bills.

"By reason of the negligence of the defendant, I have been subjected to great pecuniary loss, apart from my mental anguish, and I have been deprived of a substantial measure of support and maintenance."

■ She does not state her age, but she was appointed Administratrix at least two years ago. She must have been over 21 years of age at that time. § 94 of the N. Y. Surrogate's Court Act. She does not state that she has been unemployed, or is unemployable. All that the decedent, her brother, did for her was voluntary on his part. He was a good son and brother. He was under no legal obligation to support his sister Edith. She has no cause of action for loss of his support under Portugese law. She made no claim, as a dependent of the decedent, in the proceeding before the New York Workmen's Compensation Bureau, which made the award to her mother, Bertha, as decedent's sole dependent. I am satisfied that Edith Komlos was not a legal dependent of the decedent under the law of Portugal, but that her mother was. Only the mother has the right of action for unlawful death under Portugese law.

■ There is, therefore, no occasion to apply the salutary doctrine against splitting a cause of action. Indemnity Ins. Co. of North America v. Pan American Airways, D.C., 57 F.Supp. 980. The mother, Bertha, is the sole dependent in this case and is also the sole next of kin. "The entire beneficial interest in the cause of action against the wrongdoer" (Bertha's interest) passed to the insurer (Royal Indemnity Company) under section 29, subd. 2, of the New York Workmen's Compensation Act. Matter of Zirpola v. T. & E. Casselman, Inc., 1924, 237 N.Y. 367, at page 375, 143 N.E. 222, 225. The provisions of the New York statute are referred to in footnote No. 4 of the opinion of Mr. Justice Stone in Doleman v. Levine, 1935, 295 U.S. 221, at page 228, 55 S.Ct. 741, at page 745, 79 L. Ed. 1402, a suit under the Longshoremen's and Harbor Workers Compensation Act, 33 US.C.A. § 901 et seq. The footnote reads as follows:

"A like construction has been given to the similar, but not identical, compensation statute of New York. If the persons receiving compensation do not include all of the next of kin who are beneficiaries under the Wrongful Death Act, the employer or insurance carrier must prosecute his claim to share in the proceeds through the administrator as statutory trustee, and may compromise or release his own interest, but no other. U. S. Fidelity & Guaranty Co. v. Graham & Norton Co., 254 N.Y. 50, 53, 171 N.E. 903; Zirpola v. Casselman, Inc., 237 N.Y. 367, 375, 143 N.E. 222. But if all of the next of kin entitled to receive the benefit of the recovery for wrongful death elect to receive compensation, the employer or insurance carrier may maintain the action against the wrongdoer. See Zirpola v. Casselman, Inc., supra, 237 N.Y. [at page] 373, 143 N.E. 222; Travelers Insurance Co. v. [Louis] Padula Co., 224 N.Y. 397, 121 N.E. 348."

If the Royal Indemnity Company recovers in its action against the defendant a sum in excess of the total amount of compensation awarded decedent's dependent (Bertha Komlos) together with the reasonable and necessary expenditures incurred in effecting such recovery, two-thirds of such excess shall forthwith be paid to the dependent; and to the extent of two-thirds of any such excess such recovery shall be deemed for the benefit of decedent's dependent. § 29, subd. 2.

■ The provisions of the New York Workmen's Compensation Act were part of the contract of hiring which was entered into between employer and employee in New York state. Alexander v. Movietonews, Inc., 273 N.Y. 511, 6 N.E.2d 604. The deceased, Emery Komlos, was a citizen and resident of New York state. His employer, Refugee Economic Corporation, was a corporation incorporated under the laws of the state of New York, and the compensation carrier was authorized to do business in the state of New York. When the deceased entered into the contract of

hire he impliedly agreed to the terms of the Workmen's Compensation Act. The New York legislature was not seeking to extend its laws relating to torts extra-territorially when it enacted section 29(2) of the Act. It could, however, give extra-territorial effect to a contract. As was said in Post v. Burger & Gohlke, 216 N.Y. 544, 111 N.E. 351, 352:

"It is well settled that the Legislature has the power [in a case like that now under consideration] to compel a contract between employer and employe that is extraterritorial in effect."

The "cause of action" for wrongful death of Komlos, which occurred in the Azores, was assignable by operation of law, § 29, subd. 2, to the insurer, Royal Indemnity Company.

Annexed to the defendant's motion papers for summary judgment in the action of the Komlos Administratrix, is a copy of the stenographer's minutes of the hearing before Referee Slavin of the Workmen's Compensation Board, held March 1, 1950. Ex. C. Mrs. Bertha Komlos, mother of the deceased, and a representative of her at-

torney attended. The record of the hearing is short (10 pages). At the end of the hearing the Referee made the following findings:

"The Referee: Finding of accident, notice and causal relation. I further find the mother was a dependent under Section 16 of the Law. An award is hereby made to the mother based upon the maximum rate. Award is also made of $400 for funeral allowance payable to the undertaker. Now, attorney's fees, in connection with the compensation case—

"Mr. Goldman: That will probably be waived. I suggest it be deferred. Let the fee be waived.

"The Referee: Attorney waives fee. The case is continued six months on the question of third party action."

Exhibit D, also annexed, is the notice of the decision of the Board, signed by the Chairman, dated March 6, 1950, addressed to the claimant, Bertha Komlos; to her attorney, Frederick W. Scholem; to the employer, Refugee Economic Corporation; and to the Riverside Memorial Chapel. The notice read:

"You are hereby notified that at a hearing held before the Workmen's Compensation Board on 3/1/50 a decision and award of compensation was made in the above case as follows:—

| Name | Address | Relationship | Date of Birth | Percentage | Rate per week |
|------|---------|--------------|---------------|------------|---------------|
| Bertha Komlos | above | Mother | 1–15–88 | 40 | $21.00 |

Case Continued six months on question of 3rd party action. (Commutation withheld at this time)

and the employer and insurance carrier are hereby directed in accordance with the provisions of the Workmen's Compensation Law, to pay such award to the following persons:

To   Mrs. Bertha Komlos, mother, for herself—above
          (Name)                              (Address)
and funeral expenses $400.00 to undertaker, Riverside Memorial
                    (Name)                    (Address)
Chapel; Inc.

Employer and carrier are directed to pay at once $420.00 for 20 weeks at $21.00 from date of death 1/28/49 to 3/17/50 direct to the mother, for herself and thereafter $20.00 biweekly."

The original notice of decision is stamped "Received Mar. 7, 1950, Met. Com. Claims."

There are also annexed to defendant's motion papers in the Komlos action photostats of the checks paid by the Royal Indemnity pursuant to the decision and award made by the Workmen's Compensation Board. There is a check to Riverside Memorial Chapel, Inc., for $400 dated March 14, 1950, a check to Bertha Komlos for $420 dated March 14, 1950 and a series of checks each for $84, the first dated March 31, 1950 and the last dated September 17, 1951, all of which bear the endorsement of Bertha Komlos.

The attorney for the Komlos administratrix makes affidavit that he, the attorney, "was never served with a notice of the award of compensation on any claim made as a result of the death of Emery Komlos", that he "never received such a notice of award of compensation"; that he has been informed "by the members of the family of Emery Komlos, deceased, that they have never received such notice of award at any time although they have been receiving payments of compensation". He does not say that he did not know that an award of compensation had been made by the Compensation Board. His representative was present when the Referee announced his finding on March 1, 1950. But all this is not material.

Section 20 of the Compensation Law provides that the Chairman or Board shall make or deny an award determining the claim for compensation and file the same in the office of the Chairman; and that "immediately after such filing the chairman shall send to the parties a copy of the decision". An appeal to the courts from the award may be taken within thirty days after notice of filing has been sent to the parties. Section 23. In order to set the time running on an appeal from the Board's decision, proof of the mailing of the notice of the award would be required. But section 20 has nothing to do with the statutory assignment of the right of action to the insurer. Section 29 of the Act governs that.

Section 29, subd. 2, of the Workmen's Compensation Law, as it read in October 1950, did not date the six month period for suit against a third party from the time the claimant's attorney or his client receive notice that an award has been made by the Workmen's Compensation Board. The law provides that the action against a third party shall be "commenced not later than six months after the awarding of compensation".

■ The award was made on March 6, 1950. The attorney for the administratrix did not commence his suit against the third party, Air France, until October 26, 1950, which was about seven weeks after the six month period had expired. The claim against the third party, Air France, for wrongful death, was assigned to the insurer Royal Indemnity Company by operation of law on September 6, 1950. That company commenced its action against Air France on October 3, 1951. The Royal Indemnity Company action was timely brought. Hatch v. Cherry Burrell Corp., 274 App.Div. 234, 82 N.Y.S.2d 322.

But plaintiff's attorney further argues that a later amendment to Section 29, subd. 2, is retroactive and that under it the assignment to the insurer (Royal Indemnity Company) never became effective because the insurer did not give thirty days' prior notice to the dependent, to whom an award of compensation had been made under the Act.

■ The amendment to subdivision 2 of section 29 of the New York Workmen's Compensation Law, effective September 1, 1951, has no retroactive effect on the assignment to Royal Indemnity. Nothing in the enactment, Chap. 527 of the Laws of 1951, amending section 29, subd. 2, so provides. In fact, section 2 of Chap. 527 states: "This act shall take effect September first, nineteen hundred fifty-one". The question of whether the claim for wrongful death was assigned by operation of law to Royal Indemnity must be determined by the provisions of section 29, as they read in September 1950. At that time, there was no provision requiring a thirty day notice from the insurance carrier to

the claimant, requesting the claimant to commence the action on the claim against the third party, as a prerequisite to the assignment of the claim to the insurance carrier by operation of law. Almost eighteen months before the amendment to section 29 went into effect an award had been made by the State Workmen's Compensation Chairman (March 6, 1950), and the cause of action on the claim for unlawful death was assigned to the insurer on September 6, 1950, eleven months before the amendment became effective. This fact differentiates this case from Hession v. Sari Corporation, 283 N.Y. 262, 28 N.E.2d 712. The statutory assignment was complete before the amendment of section 29. Skakandy v. State of New York, 274 App. Div. 153, 80 N.Y.S.2d 849, affirmed 298 N.Y. 886, 84 N.E.2d 804.

I make the following disposition of the motions made by the defendant in these actions:

(1) The defendant's motion for summary judgment is granted in the Komlos action to this extent that the claim for wrongful death is dismissed because it is owned in its entirety by Royal Indemnity and the claim for $550 for funeral expenses is also dismissed because it is owned by Royal Indemnity. Both claims are subject to the claim of Bertha Komlos to any "excess" as provided by section 29, subd. 2, of the New York Workmen's Compensation Law. The balance of the Komlos action, the claim for the destruction of the decedent's baggage, will be remanded to the New York Supreme Court, New York County, from which it was removed to this Court by the defendant.

(2) The defendant's motion to dismiss the complaint in the Royal Indemnity action is granted to this extent only, that the claim for the destruction of decedent's baggage is dismissed, because it belongs to the Administratix of the estate of Emery Komlos and is included in the Komlos action.

(3) The motion of the Administratrix in the Komlos action to consolidate the two actions is denied, because the only remaining claim in the Komlos action is for $1,500 over which this Court does not have jurisdiction. For that reason what remains of the Komlos action will be remanded to the court from which it was removed, as above indicated.

Settle an order accordingly.