572 F.2d 913
 51 A.L.R.Fed. 934
 Abraham BENJAMINS, as Personal Representative of the Estate
of Hilde Benjamins, Deceased, Plaintiff-Appellant,
v.
BRITISH EUROPEAN AIRWAYS, Hawker Siddeley Aviation, Ltd.,
and Hawker Siddeley Group, Ltd., Defendants-Appellees.
 No. 111, Docket 77-7201.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1977.
Decided March 6, 1978.
 
 Ronald L. M. Goldman, Marina del Rey, Cal. (Ronald L. M. Goldman & Associates, Marina del Rey, Cal., on brief), for plaintiff-appellant.
 George N. Tompkins, Jr., New York City (Condon & Forsyth, Ronald E. Pace and Michael J. Holland, New York City, on brief), for defendant-appellee British European Airways.
 James J. Finnerty, Jr., New York City (Mendes & Mount, New York City, on brief), for defendant-appellee Hawker Siddeley Aviation, Ltd.
 Before LUMBARD, FEINBERG and VAN GRAAFEILAND, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 This appeal, arising out of the death of Hilde Benjamins in the air crash disaster at Staines, England, on June 18, 1972, once again presents us with the much-discussed question whether the Warsaw Convention[1] creates a cause of action. The District Court for the Eastern District dismissed the complaint herein, believing itself bound by our prior decisions[2] to answer that question in the negative. We reverse.
 
 
 2
 * On June 18, 1972, a Trident 1 Jet Aircraft designed and manufactured by Hawker Siddeley Aviation, Ltd. ("HSA"), and owned and operated by British European Airways ("BEA") took off for Brussels from London's Heathrow Airport. Soon thereafter, the plane stalled and crashed into a field, killing all 112 passengers, including Hilde Benjamins. Hilde Benjamins was survived by her husband Abraham; both were Dutch citizens permanently residing in California. BEA and HSA are British corporations with their principal places of business in the United Kingdom. The ticket on which Hilde Benjamins was travelling had been purchased in Los Angeles, and clearly provided "international transportation" within the meaning of Article 1 of the Convention. Therefore, since the United States and the United Kingdom are both High Contracting Parties, the Convention is applicable to this proceeding.
 
 
 3
 This suit for wrongful death and baggage loss was brought in April of 1974 in the Eastern District of New York by Abraham Benjamins, as representative of his widow's estate, on behalf of himself and the children of the marriage. Benjamins' action was consolidated with a number of others arising out of the same incident, and assigned to Judge Weinstein. In re Air Crash Disaster at Staines, England, MDL No. 147 (J.P.M.D.L.). The major allegations in the complaint invoked Articles 17 and 18 of the Convention. These read, in relevant part, as follows:
 
 
 4
 Article 17. The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
 
 
 5
 Article 18(1). The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
 
 
 6
 Dismissed once for lack of subject matter jurisdiction only diversity was originally alleged the complaint was amended to invoke 28 U.S.C. §§ 1331 and 1350 as well.[3] After both sides had submitted briefs, Judge Weinstein ruled that this suit did not "arise" under a treaty of the United States, as § 1331 requires; he relied on Second Circuit precedent indicating that the Convention does not create a cause of action, but only establishes conditions for a cause of action created by domestic law. This appeal followed.
 
 II
 
 7
 The first question we address[4] is whether any court in this country has jurisdiction in the "international or treaty sense." Smith v. Canadian Pacific Airways, Ltd., 452 F.2d 798, 800 (2d Cir. 1971). Only then may we consider "the power of a particular United States court, under federal statutes and practice, to hear a Warsaw Convention case jurisdiction in the domestic law sense." Id.
 
 
 8
 Jurisdiction in the treaty sense is determined by Article 28(1) of the Convention, which provides that
 
 
 9
 (a)n action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.
 
 
 10
 The third alternative of Article 28(1) is satisfied in this case: the ticket which constituted the contract of carriage was purchased in Los Angeles, through BEA. The fourth alternative appears also to fit, as decedent's round-trip ticket provided for an ultimate destination in the United States.
 
 
 11
 Nonetheless, courts in the United States, and particularly the federal courts, are not the only possible forum for Abraham Benjamins. The courts of England are open to his suit permitted by the first and second alternatives of Article 28(1) as are the state courts of California.[5] Plaintiff's burden is not met by a showing that Article 28(1) permits some court of this country to hear his complaint; he must further show that some jurisdictional statute permits a federal court to do so.
 
 III
 
 12
 The two bases for federal jurisdiction pleaded in Benjamins' amended complaint are the Alien Tort Claims Act, 28 U.S.C. § 1350,[6] and a general federal question "arising under" a treaty.
 
 
 13
 The Alien Tort Claims Act does not provide a basis for jurisdiction over this action. Without having to discuss the question of whether the wrongful death action against a carrier is essentially one in tort or in contract, we are satisfied that Benjamins' complaint alleges a violation of neither the law of nations nor any treaty of the United States.
 
 
 14
 The Convention itself does not seek to outlaw accidents, crashes and other events causing death, injury or property loss. Rather, it sets forth the terms under which victims of such events may recover their damages. Airlines do not "violate" the Convention when they crash even if their negligence was "wilful" but only when they fail to compensate victims who are adjudged to be appropriate recipients of damages. The fact that a claimant must bring an action to recover does not constitute a violation by the carrier of its obligations.
 
 
 15
 Nor do the acts alleged violate the law of nations under the standards we set in IIT v. Vencap, Ltd., 519 F.2d 1001, 1015 (2d Cir. 1975): "a violation . . . of those standards, rules or customs (a) affecting the relationship between states or between an individual and a foreign state, and (b) used by those states for their common good and/or in dealings inter se." See Dreyfus v. Von Finck, 534 F.2d 24, 30-31 (2d Cir. 1976). This law does not include a prohibition of air crashes.
 
 IV
 
 16
 Accordingly, we must determine whether any of the causes of action pleaded by Benjamins "arise under" the Warsaw Convention. It is true that in the past we have said that the Warsaw Convention does not create a cause of action. We believe, however, that a re-examination of the question requires a different answer.
 
 
 17
 * At the time the United States adhered to the Convention, it seemed obvious to all that the Convention created causes of action for wrongful death or personal injury (Article 17), and for damage to baggage (Article 18). One court went so far as to say, "If the Convention did not create a cause of action in Art. 17, it is difficult to understand just what Art. 17 did do." Salamon v. Koninklijke Luchtvaart Maatschappij, N.V., 107 N.Y.S.2d 768, 773 (Sup.Ct.1951), aff'd mem., 281 App.Div. 965, 120 N.Y.S.2d 917 (1st Dept. 1953).[7]
 
 
 18
 The view that the Convention does not create a cause of action is, in large part, attributable to two cases we decided in the 1950s, Komlos v. Compagnie Nationale Air France, 209 F.2d 436 (2d Cir. 1953), rev'g on other grounds, 111 F.Supp. 393 (S.D.N.Y.1952), cert. denied, 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954), and Noel v. Linea Aeropostal Venezolana, 247 F.2d 677 (2d Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957):
 
 
 19
 The Second Circuit had spoken twice, the Supreme Court had denied certiorari, and in all subsequent American Warsaw cases it was either assumed or decided that the claim must be founded on some law other than the Convention itself.
 
 
 20
 Lowenfeld & Mendelsohn, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 519 (1967).
 
 
 21
 The analysis on which this structure of holding rests is to be found in Judge Leibell's opinion for the district court in Komlos. In determining whether a cause of action had been assigned to an insurer or remained the property of an estate, Judge Leibell held that the action envisioned by Article 17 was one created by domestic law, except in cases where the forum provided no analogous action. 111 F.Supp. at 401-02.
 
 
 22
 Judge Leibell relied heavily on a letter sent by Secretary of State Cordell Hull to President Roosevelt on March 31, 1934, recommending adherence to the Convention. In the course of a lengthy discussion of the benefits of adherence, Hull wrote:
 
 
 23
 The effect of article 17 (ch. III) of the Convention is to create a presumption of liability against the aerial carrier on the mere happening of an accident occasioning injury or death of a passenger subject to certain defenses allowed under the Convention to the aerial carrier.
 
 
 24
 (1934) U.S.Av.Rep. 240, 243. This was seen by Judge Leibell as clear evidence that the Convention created only presumptions, not new causes of action.
 
 
 25
 In reversing Judge Leibell on another issue, we did not refer to the portion of his opinion discussed above, or, indeed, even mention the Warsaw Convention. 209 F.2d at 438-40. Nonetheless, in Noel, we followed our opinion in Komlos, which, we said, had "impliedly agreed" with Judge Leibell. 247 F.2d at 679. Though most of our opinion in Noel was devoted to disapproving Judge Leibell's suggestion that Article 17 might create a cause of action for wrongful death where domestic law did not, it is apparent that however founded Noel, as the law of this circuit, stands for the proposition that the Convention does not create a cause of action. See, e. g., Husserl v. Swiss Air Transport Co., 388 F.Supp. 1238, 1251-52 (S.D.N.Y.1975).
 
 
 26
 Recently, an inconsistency has developed between this rule and another line of Warsaw cases we have decided. For example, in Reed v. Wiser, 555 F.2d 1079 (2d Cir.), cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977), we indicated without addressing the question in the instant case that "the Convention was intended to act as an international uniform law," id. at 1083, and that the substantive law of the Convention was binding on the forum, id. at 1092. The time has come to examine the question whether our view of the Convention as an internationally binding body of uniform air law permits us any longer to deny that a cause of action may be founded on the Convention itself, rather than on any domestic law.
 
 B
 
 27
 1. The minutes and documents of the meetings, held in 1925 and 1929, which led to the adoption of the Convention do not specifically indicate whether the parties contemplated that an action for damages under the Convention would arise under the terms of the treaty or those of domestic law.[8] What is made quite clear is the extent to which the delegates were concerned with creating a uniform law to govern air crashes, with absolutely no reference to any national law (except for the questions of standing to sue for wrongful death, effects of contributory negligence and procedural matters; see Articles 21, 24(2), 28(2)).
 
 
 28
 The delegates were concerned lest major air crash cases be brought before courts of nations whose courts were not (according to current Western standards) well organized, nor whose substantive law (according to the same standards) progressive. To avoid the "prospect of a junglelike chaos," Reed v. Wiser, supra, 555 F.2d at 1092, the Convention laid down rules that were to be universally applicable. While it is not literally inconsistent with this universal applicability to insist that a would-be plaintiff first find an appropriate cause of action in the domestic law of a signatory authorized by Article 28 to hear his claim, it is inconsistent with its spirit.[9] This inconsistency is an argument against the rule of Noel and Komlos, for the Convention is to be so construed as to further its purposes to the greatest extent possible, even if that entails rejecting a literal reading. Eck v. United Arab Airlines, Inc., 360 F.2d 804, 812 (2d Cir. 1966).
 
 
 29
 2. Other articles of the Convention throw some light on the question whether Articles 17 and 18 create causes of action. Article 30(3) provides that in the case of transportation by several carriers constituting one undivided transportation,
 
 
 30
 (a)s regards baggage or goods, the passenger or consignor shall have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier, and further, each may take action against the carrier who performed the transportation during which the destruction, loss, damage, or delay took place. . . .
 
 
 31
 The most reasonable interpretation of this section is that Articles 18 and 30(3) create a cause of action against the appropriate carrier when more than one carrier is involved. See Seth v. British Overseas Airways Corp., 329 F.2d 302, 305 (1st Cir.), cert. denied, 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61 (1964): "Thus the Convention not only imposes liability on an air carrier for the loss of checked baggage but also gives a passenger whose baggage is lost a right of action to enforce that liability. Seth's action, therefore, seems clearly to be one arising under a treaty of the United States." There is no reason to believe that the Convention's effect is any different when only one carrier is involved.
 
 
 32
 Article 24 has been cited by proponents of both views of the Convention. In the French version the only official version the Article reads:
 
 
 33
 (1) Dans les cas prevus aux articles 18 et 19 toute action en responsabilite, a quelque titre que ce soit, ne peut etre exercee que dans les conditions et limites prevues par la presente Convention.
 
 
 34
 (2) Dans les cas prevus a l'article 17, s'appliquent egalement les dispositions de l'alinea precedent . . ..
 
 The unofficial translation reads:
 
 35
 (1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.
 
 
 36
 (2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply. . . .
 
 
 37
 The crucial phrases, of course, are "however founded" ("a quelque titre que ce soit"), and "conditions" ("conditions"). There is no internal evidence to indicate whether "however founded" was intended to refer to a number of possible domestic law sources or to a number of possible factual bases for the envisioned action.
 
 
 38
 As to "conditions," that term in English does imply that the source of the action must be sought elsewhere than the Convention, which supplies only conditions and limits. Nonetheless, there is some evidence for the view that the French has not been so translated here as to provide the best interpretation of the delegates' meaning, and that "basis" or "terms" would be a closer translation in this context of "conditions." Calkins, supra, 26 J. Air L. & Comm. at 225-26. The arguments as to Article 24 are not conclusive either way.
 
 
 39
 3. More compelling is the evidence of how other signatories of the Convention have interpreted its provisions. The clearest picture is found in other common-law jurisdictions. In the statute enacting the original 1929 Convention in the United Kingdom, it was provided that
 
 
 40
 (a)ny liability imposed by Article seventeen of the said (Warsaw Convention) on a carrier in respect of the death of a passenger shall be in substitution for any liability of the carrier in respect of the death of that passenger either under any statute or at common law . . . .
 
 
 41
 Carriage by Air Act, 1932, 22 & 23 Geo. 5, c. 36, § 1(4). When the Convention was reenacted as amended at the Hague in 1955, Carriage by Air Act, 1962, 9 & 10 Eliz. 2, c. 27, this language was omitted, but there is no indication that any change of substantive law was intended. No case law since 1962 has demonstrated that the source of carrier liability lies anywhere but in the Convention. See also Carriage by Air Act, 1939, 3 Geo. 6, c. 12 (Canada).
 
 V
 
 42
 The fact that a proposition of law has been accepted for some twenty years is evidently a sign that circumspection is needed in seeking to overturn that proposition. We recognize that our holdings in Komlos and Noel have become the rule not of this circuit alone, but of others as well. See, e. g., Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256, 1258 (9th Cir.), cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Nonetheless, we are convinced that in light of both the paucity of analysis that accompanied the creation of the rule and the strong arguments in favor of the opposite rule the Komlos/Noel rule ought no longer to be followed.
 
 
 43
 We do not believe that the passing remark of Secretary Hull in a lengthy letter was intended to state the total of what Article 17 might provide; we do not see what there was about our decision in Komlos that constituted implicit agreement with Judge Leibell, and compelled the result in Noel ; we do not find technical and disputable interpretations of the language of other articles of the Convention conclusive in determining this important question of policy.
 
 
 44
 We do, on the other hand, believe that the desirability of uniformity in international air law can best be recognized by holding that the Convention, otherwise universally applicable, is also the universal source of a right of action. We do see that uniformity of development can better be achieved by making federal as well as state courts accessible to Convention litigation. We do find the opinions of our sister signatories to be entitled to considerable weight.
 
 
 45
 One factor which makes federal jurisdiction peculiarly appropriate in large air crash cases was not present at the time Komlos and Noel were decided. Section 1407 of 28 U.S.C., enacted by Pub.L.No.90-296, 90th Cong., 2d Sess., 82 Stat. 109 (April 29, 1968), created the Judicial Panel on Multidistrict Litigation, and authorized the creation of the procedures found in the Manual for Complex Litigation. These procedures, such as consolidation and assignment to one expert judge, can by reducing expenses and expediting dispositions benefit all parties to air disaster actions, in which the plaintiff/victims may come from many different parts of the country. Obviously, these procedures are unavailable among the courts of the several states.
 
 
 46
 Finally, we do not anticipate any large increase in the volume of federal litigation as a result of our holding. Most cases will fall under 28 U.S.C. § 1332, as they do today; only when plaintiffs and defendants are all aliens, but the United States is a nation with treaty jurisdiction, will it be necessary to invoke 28 U.S.C. § 1331.
 
 VI
 
 47
 Accordingly, we reverse Judge Weinstein's order of dismissal. We leave it to his discretion to determine, in a manner consistent with our opinion, which of Benjamins' causes of action he may decide and which, if any, he may not; in particular, we leave to him the question whether to take pendent jurisdiction over the claims against HSA.
 
 
 48
 Reversed and remanded for further proceedings consistent with our opinion.
 
 VAN GRAAFEILAND, Circuit Judge, dissenting:
 
 49
 The United States Senate is presently debating the wisdom of a proposed Panama Canal treaty, by which Panama will be given control of the Canal but certain rights will be reserved to the United States. One of the main concerns of those opposing ratification of the treaty is whether they can rely upon the interpretation of its provisions given them by the executive branch of our government. Opinions such as the one this Court now hands down demonstrate that their concern may not be ill-founded.
 
 
 50
 In 1934, when Secretary of State Cordell Hull sent the Warsaw Convention to President Roosevelt for transmission to the Senate, he wrote that the effect of Article 17 was to "create a presumption of liability." We may assume, I believe, that the Senate relied upon the Secretary of State's assurances. Without question, the courts have done so. See Noel v. Linea Aeropostal Venezolana, 247 F.2d 677 (2d Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957); Komlos v. Compagnie Nationale Air France, 111 F.Supp. 393 (S.D.N.Y.1952), rev'd on other grounds, 209 F.2d 436 (2d Cir. 1953), cert. denied, 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954); Ross v. Pan American Airways, Inc., 299 N.Y. 88, 97-98 (1949). In Noel we said:
 
 
 51
 Secretary of State Hull's letter to President Roosevelt, dated March 31, 1934, indicated that the effect of Article 17 on which plaintiffs rely for their argument was only to create a presumption of liability, leaving it for local law to grant the right of action. As one authority has stated, the purpose of the Convention was only "to effect a uniformity of procedure and remedies." Orr, The Warsaw Convention, 31 Va.L.Rev. 423 (1945); see also Comment, Air Passenger Deaths, 41 Corn.L.Q. 243, 255-60 (1956); Fixel, The Law of Aviation, § 23 (1948).
 
 
 52
 247 F.2d at 679 (footnote omitted).
 
 
 53
 Completely reversing our field, we now hold that Article 17 creates a cause of action for wrongful death. As justification for this turnabout, the majority relies in part upon the "paucity of analysis that accompanied the creation of the rule." I am at a disadvantage in challenging this statement, because Judge Lumbard, the writer of the majority opinion, also wrote Noel. However, I am satisfied that Judge Lumbard gave Noel the same careful and thoughtful consideration he gives to every case, and which he has given to this one. Moreover, I am convinced that the numerous courts who have adopted the reasoning of Noel, see, e. g., Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256, 1258 (9th Cir.), cert. denied, 431 U.S. 934, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977), did not do so without their own thoughtful analysis of its merit. In short, I am constrained to conclude, as Judge Moore did when dissenting in Lisi v. Alitalia Linee Aeree Italiane, S.p.A., 370 F.2d 508, 515 (2d Cir. 1966), aff'd by an equally divided court, 390 U.S. 455, 88 S.Ct. 281, 19 L.Ed.2d 276 (1968), that the majority no longer approves of the terms of the Convention and therefore by judicial fiat has decided to rewrite it. In the process, the majority draws within the ever-widening ambit of federal jurisdiction an entirely new class of cases which Congress probably never intended should be there.
 
 
 54
 A court should proceed cautiously when asked to overturn a well-settled doctrine of law. This is especially true in this case because a sensitive question concerning the scope of federal jurisdiction is involved. But even more importantly, circumspection is required here because amendments to the Warsaw Convention that may end this entire controversy are currently pending.
 
 
 55
 We have pointed out recently that "(t)he Warsaw Convention is not a treaty that has mouldered on the books. On the contrary it has had agonizing reappraisal by the Executive and Legislative branches . . . ." Reed v. Wiser, 555 F.2d 1079, 1093 (2d Cir.), cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977). One result of this reappraisal has been the Guatemala City Protocol to amend the Warsaw Convention.[1] The United States has signed the Protocol, and ratification is now pending before the Senate. Hearings have been held as recently as July, 1977.[2] The Protocol makes extensive revisions in the Convention's provisions concerning liability. See R. Boyle, The Guatemala Protocol to the Warsaw Convention, 6 Cal.W.Int'l L.J. 41 (1975). In particular, the Protocol amends Article 17 to impose absolute liability on the carrier. Some commentators have expressed the view that the amendments to Article 17, if ratified, will legislatively overrule the Noel decision. R. Boyle, supra, 6 Cal.W.Int'l L.J. at 74; Note, The Guatemala City Protocol, 5 N.Y.J.Int'l L. 313, 324-27 (1972). But whether or not the amendments will have that result is unimportant; the mere fact that they are pending is a clear indication that this matter is one which should be left to the coordinate branches of our Government, at least in the absence of some compelling reason. No such reason is presented by this case. Plaintiff can bring his action in a number of other forums. Our continued adherence to Noel causes no injustice. Under these circumstances, I would decline to reconsider the question of whether Article 17 creates a cause of action.
 
 
 56
 Even if I were persuaded that a re-examination of Noel was appropriate at this time, I should not be convinced that it was incorrectly decided. Article 17 states that "(t)he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger . . ." and the plain language of this article is the majority's strongest argument that the Convention created a right to sue. However, a close analysis of this section reveals that its meaning is not as clear as might appear on its face.
 
 
 57
 At the time the Convention was drafted it was generally accepted in this country that a cause of action for wrongful death could not be maintained in the absence of a specific statute authorizing such suit. See, e. g., Aetna Life Insurance Co. v. Moses, 287 U.S. 530, 539, 53 S.Ct. 231, 77 L.Ed. 477 (1933); Salsedo v. Palmer, 278 F. 92 (2d Cir. 1921). All American states have such statutes, but the statutes differ widely with respect to "the persons for whose benefit a death action may be maintained, and the measure, elements and distribution of damages recoverable." 1 S. Speiser, Recovery for Wrongful Death § 1.9 at 29 (2d ed. 1975) (footnotes omitted). Although the statutes take different approaches, they are alike in the fact that they all expressly deal with these crucial questions.[3] Article 17 of the Convention, on the other hand, does not specify who are the beneficiaries of the action, nor what types of damages may be recovered. Indeed, the Convention provides that an action for a passenger's death is brought "without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights." Article 24(2). Thus, Article 17 at best goes only half way towards creating a cause of action for wrongful death. See Zousmer v. Canadian Pacific Air Lines, Ltd., 307 F.Supp. 892, 901 (S.D.N.Y.1969).[4] I am not persuaded that this legislatively created "liability", which designates neither the beneficiaries of the right of recovery nor the measure of their damages, creates a cause of action. The phrase "the carrier shall be liable" had a different purpose, as becomes apparent when Article 17 is examined in the context of the entire Convention.
 
 
 58
 The purpose of Warsaw was "to effect a uniformity of procedure and remedies." Noel, 247 F.2d at 679 (quoting Orr, The Warsaw Convention, 31 Va.L.Rev. 423 (1945)). To accomplish this goal, the drafters could have created a single cause of action to be asserted wherever suit was brought for wrongful death in international air travel. Alternatively, the drafters could have created a set of conditions and limitations uniformly applicable to all the various causes of action created by local law of the countries around the world. The drafters' choice of the latter alternative is evidenced by Article 24, which provides that any action "however founded" may only be brought "subject to" the "conditions and limits set out in (the) convention." Husserl v. Swiss Air Transport Co., 388 F.Supp. 1238, 1251-52 (S.D.N.Y.1975). Thus, no matter whether the action is founded in tort or contract, whether in domestic or foreign law, the limitations and conditions of the Convention will apply. See Reed v. Wiser, 555 F.2d at 1092.[5]
 
 
 59
 Within this structure, Article 17 plays an important role. The basic trade-off under Warsaw was that the carrier was given a limitation on liability while the claimant gained a simplified recovery procedure. Hearings on Ex. B, note 2 supra, at 11 (statement of L. Kamm). See also Pierre v. Eastern Airlines, 152 F.Supp. 486 (D.N.J.1957). The claimant's task was simplified by shifting the burden of proof to the defendant. The manner in which the drafters shifted the burden is important. By stating that "the carrier shall be liable" in Article 17, the drafters created a presumption of liability which could then be rebutted under Article 20(1) by the carrier's proof that it was free from negligence. A. Lowenfeld & A. Mendelsohn, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 519-22 (1967). The new burden of proof, like the limitation on liability, is applicable to any action "however founded." Viewed in this light, I think it entirely reasonable to conclude, as we did in Noel, that the phrase "the carrier shall be liable" does not itself create a right to sue, but merely conditions the cause of action generated by the underlying substantive law.
 
 
 60
 The majority finds a right of action in the language of Article 17 mainly because it believes that "the desirability of uniformity in international air law can best be recognized" in this way. Even were I to agree with this approach, I should not be sure that the majority opinion promotes uniformity. There is no reason to believe that the new right of action is exclusive.[6] State and federal rights of action will co-exist and may be pleaded in the same case. Moreover, federal courts will be required to supply the elements missing in the Convention's "cause of action". Unless the federal courts develop a body of federal common law, they must look to other sources of law for these elements. They must look to local law to determine whether a plaintiff was guilty of contributory negligence, Article 21, whether his damage was caused by the carrier's wilful misconduct, Article 25, whether he has a right of recovery for wrongful death, and the measure of his damages, Article 24(2). There can be no uniformity here.
 
 
 61
 I fear that when my brothers discuss uniformity, they are really talking about federal jurisdiction. State courts handle Warsaw Convention matters as wisely and fairly as do federal courts and with greater knowledge of the state law that must be applied. I see no reason to upset a long-standing rule of law simply to give the plaintiff access to the federal courts.[7]
 
 
 62
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. No. 876 (concluded Oct. 12, 1929; adhered to by United States June 27, 1934) (hereinafter referred to as "Convention"; "Article(s) " means Article(s) of the Convention)
 
 
 [2]
 Judge Weinstein cited Husserl v. Swiss Air Transport Co., 485 F.2d 1240 (2d Cir. 1973), aff'g 351 F.Supp. 702 (S.D.N.Y.1972); Noel v. Linea Aeropostal Venezolana, 247 F.2d 677 (2d Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957); and Komlos v. Compagnie Nationale Air France, 111 F.Supp. 393 (S.D.N.Y.1952), rev'd on other grounds, 209 F.2d 436 (2d Cir. 1953), cert. denied, 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954). He indicated, however, that he thought the matter not free from doubt, and commended the question to our careful attention
 
 
 [3]
 Jurisdiction over HSA is alleged under principles of pendent jurisdiction
 
 
 [4]
 Personal jurisdiction is not an issue in this case, as each defendant has submitted to the in personam jurisdiction of the court
 
 
 [5]
 Smith v. Canadian Pacific Airways, Ltd., supra, indicates that venue is no concern of Article 28(1), 452 F.2d at 800-01. It answers only the question "whether suit may be brought at all in the courts of the United States," whether state or federal and regardless of location. Id. at 800 n. 3
 
 
 [6]
 The District Courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States
 
 
 [7]
 But see Wyman v. Pan American Airways, 181 Misc. 963, 43 N.Y.S.2d 420 (Sup.Ct.1943), aff'd, 267 App.Div. 947, 48 N.Y.S.2d 459 (1st Dept.), aff'd, 293 N.Y. 878, 59 N.E.2d 785, cert. denied, 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432 (1944)
 
 
 [8]
 Some commentators, at least, have attributed this to its being taken for granted that the Convention itself supplied the cause of action. E. g., Lowenfeld & Mendelsohn, supra, 80 Harv.L.Rev. at 517. A stronger statement comes from the Chairman of the United States Delegation to the Hague Conference to Amend the Warsaw Convention, G. Nathan Calkins:
 (T)he author is convinced that the draftsmen of the Convention intended to create a right-of-action based on the contract of carriage; that the draftsmen did in fact carry this intention out in the Convention as signed; that it is self-executing; and therefore the supreme law of the land today.
 Calkins, The Cause of Action Under the Warsaw Convention, 26 J. Air L. & Comm. 217, 218 (1959).
 
 
 [9]
 We note that, after Noel, not even the total lack of an appropriate cause of action at domestic law would permit an action to be founded on the Convention itself
 
 
 [1]
 Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as amended by the Protocol Done at the Hague on 28 September 1955, done at Guatemala City March 8, 1971
 
 
 [2]
 Two related Protocols Done at Montreal on September 25, 1975: Hearings on Ex. B, Before the Senate Comm. on Foreign Relations, 95th Cong., 1st Sess. (July 26, 1977)
 
 
 [3]
 The different wrongful death statutes in effect in the United States are collected in 2 S. Speiser, supra, appendix A, at 644-787. The statutes of the other countries in the world are found in id., appendix B, at 789-859. The briefest survey of these statutes shows that virtually every one, whether domestic or foreign, specifies who are the beneficiaries of the wrongful death action and what type of damages may be recovered
 
 
 [4]
 In Rauch v. United Instruments, Inc., 548 F.2d 452, 457 (3d Cir. 1976), an action brought under the Federal Aviation Act, the Court said "For an essential element of such a cause of action, express or implied, is injury resulting from such a statutory violation which has been inflicted upon the plaintiff in his capacity as a member of the protected class and which has caused him measurable damage."
 
 
 [5]
 In Reed, after a comprehensive review of the Convention, we held that the term "carrier" as used therein included the carrier's employees, so that the Convention's limitation of liability provisions applied in an action brought against a pilot. We did not hold, however, that the Convention created a cause of action against the pilot. Instead, we pointed out that in some countries pilots may be held liable for damages under the common law doctrine of res ipsa loquitur and in other countries under the civil law doctrine of absolute liability. We carried out the intent of the Convention by limiting their liability without regard to the theory upon which it was based
 
 
 [6]
 Although the majority does not expressly address the question, there is good reason to believe that the right is not exclusive. Certainly an exclusive right would be inconsistent with the "however founded" language in Article 24. Furthermore, Calkins, in the article upon which the majority relies, viewed the right as non-exclusive. J. Calkins, The Cause of Action Under the Warsaw Convention (parts I & II), 26 J.Air.L. & Com. 217 & 323, 327 (1959)
 
 
 [7]
 One reason given by Calkins for overruling Noel is no longer persuasive. One of his main concerns was that redress be available whenever an American was killed or injured in international air travel, and recognition of a created right of action would have ensured this. At the time Calkins wrote, it was possible that an American court, applying the traditional place-of-the-wrong conflicts rules, might be forced to apply the law of a country which did not have a right to action for wrongful death. However, dramatic changes in the conflict of laws rules in this country make such a result unlikely. See Lowenfeld & Mendelsohn, supra, 80 Harv.L.Rev. at 526-32. Indeed, the majority does not even mention this possibility when marshalling the arguments in favor of a "Conventional" cause of action